UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| RICHARD WELLS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:07-cv-666 |
| | ) | |
| v. | ) | Honorable Paul L. Maloney |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |
| _____ | ) | |

       This is a social security action brought under 42 U.S.C. § 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security finding that plaintiff was not entitled to child's supplemental security income (SSI) benefits. On June 21, 2004, plaintiff's mother, Mary Wells, filed an application for benefits on plaintiff's behalf, claiming a July 1, 1999 onset of disability. (A.R. 49-51). Plaintiff's claim was denied on initial review. (A.R. 33-37). On August 16, 2005, plaintiff received a hearing before an administrative law judge at which he was represented by counsel, and during which the ALJ received testimony from the then sixteen-year-old plaintiff and his mother. (A.R. 235-72). On April 20, 2006, the ALJ issued a decision denying plaintiff's application for SSI benefits. (A.R. 16-27). On May 10, 2007, the Appeals Council denied review (A.R. 4-7), and the ALJ's decision became the Commissioner's final decision. On July 13, 2007, plaintiff filed his complaint[1] seeking judicial review of the Commissioner's decision denying his

_____

[1]Although the caption of plaintiff's complaint identifies the plaintiff as "Mary Wells for Richard Wells (Minor)," (docket # 1), it is patent that Richard Wells had attained age 18 before the complaint was filed. Richard Wells is the proper plaintiff.

claim for SSI benefits.  Plaintiff argues that the court should overturn the Commissioner's decision

on the grounds set forth verbatim below:

> I.    THE COMMISSIONER ERRED AS A MATTER OF LAW BY IMPROPERLY
> CONCLUDING THAT RW DID NOT FUNCTIONALLY EQUAL ANY LISTING
> AND BY FAILING TO PROPERLY ANALYZE THE MEDICAL RECORDS OF
> EVIDENCE.

(Plf. Brief at 2, docket # 6).  Upon review, I find that plaintiff's arguments do not provide any basis

for disturbing the Commissioner's decision.  I recommend that the Commissioner's decision be

affirmed.

### Standard of Review

When reviewing the grant or denial of social security benefits, this court is to

determine whether the Commissioner's findings are supported by substantial evidence and whether

the Commissioner correctly applied the law.  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124,

125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Heston v. Commissioner*,

245 F.3d 528, 534 (6th Cir. 2001); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997).

Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'"  *Heston*, 245 F.3d at 534 (quoting *Richardson v. Perales*, 402

U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).  The scope

of the court's review is limited.  *Buxton*, 246 F.3d at 772.  The court does not review the evidence

*de novo*, resolve conflicts in evidence, or make credibility determinations.  *See Walters v.*

*Commissioner*, 127 F.3d at 528; *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993).  "The findings

of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ."

42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006).  "The

findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . .   This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73.  "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

### Three-Step Analytical Framework

Under the Work Opportunity Act's standard,[2] a child seeking SSI benefits can establish disability only by showing that he suffers from a medically determinable physical or mental impairment which results in marked and severe functional limitations and lasts for a period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(C)(i).  "The thrust of the legislation was most certainly to tighten eligibility." *Encarnacion v. Barnhardt*, 331 F.3d 78, 83 (2d Cir. 2003).  Under the current three-step analysis, the Commissioner must ask:  (1) is the claimant engaged in

---

[2] Personal Responsibility & Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, §§ 211-12, 100 Stat. 2105, 2188-94 (1996).

substantial gainful activity?; (2) are the impairments severe?; and (3) do the impairments meet, medically equal, or functionally equal in severity a listed impairment and satisfy the durational requirements?  *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); 20 C.F.R. § 416.924a.  As a result of the Work Opportunity Act, a child claimant must meet or equal a listed impairment in order to qualify for SSI benefits.  *See* 20 C.F.R. § 416.924a; *see also Encarnacion*, 331 F.3d at 84; *Miller v. Commissioner*, 37 F. App'x 146, 148 (6th Cir. 2002).  "In order to be found disabled based upon a listed impairment, the claimant must exhibit all the elements of the listing."  *Elam*, 348 F.3d at 125.  Coming close to meeting the requirements of a listed impairment "is insufficient."  *Id.*

By regulation, the ALJ utilizes six domains of functioning to assist him in determining whether the combination of plaintiff's impairments meet or equal the severity of a listed impairment: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) the claimant's ability to care for himself; and (6) the claimant's health and physical well-being.  20 C.F.R. § 416.926a(b)(1). Impairments must result in "marked" limitations in two domains or "extreme" limitations in one domain before they meet or equal a listed impairment's severity.  20 C.F.R. § 416.926a(d); *see Encarnacion*, 331 F.3d at 84085; *see also Burke ex rel. A.R.B. v. Astrue*, No. 6:07-cv-376-KKC, 2008 WL 1771923, at * 10 (E.D. Ky. Apr. 17, 2008).  A "marked" limitation "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  "'Marked' limitation also means a limitation that is 'more than moderate' but 'less than extreme.'  It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."

-4-

*Id.*; *see England v. Astrue*, 490 F.3d 1017, 1020 (6th Cir. 2007). An "extreme" limitation is more than a "marked" limitation. An "extreme" limitation is the rating given to the "worst limitations." 20 C.F.R. 416.926a(e)(3)(i). An "extreme" limitation "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id.*; *see Morrison v. Commissioner*, No. 06-4282, 2008 WL 647753 at * 4 n.1 (3d Cir. Mar. 11, 2008).

## **Discussion**

### **1.**

The ALJ found that plaintiff was under age 18 on June 21, 2004, the date his mother filed his application for benefits, and that plaintiff remained under age 18 through the date of the ALJ's decision. Plaintiff had the following medically determinable impairments:

> [A]ttention deficit hyperactivity disorder (ADHD)(Exhibit 9F, p. 2; Exhibit 5F, p. 5), conduct disorder (Exhibit 9F, p. 2; Exhibit 5F, p. 5), learning disorder (Exhibit 9F, p. 2), adjustment disorder (Exhibit 9F, p. 2), and substance abuse (Exhibit 9F, p. 2 Exhibit 5F p. 5), which impairments in combination [were] severe.

(A.R. 19). The ALJ found that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 20-27). Plaintiff had no limitations in three of the six domains of functioning: (1) moving about and manipulating objects (A.R. 25); (2) the ability to care for himself (A.R. 26); and (3) health and physical well-being (A.R. 26-27). The ALJ found that plaintiff had a "marked" limitation in only one of the three remaining domains.

The domain of "acquiring and using information" involves the claimant's ability to acquire or learn information and to use the information he has learned.  20 C.F.R. § 416.926a(g).  ALJ found that plaintiff had less than "less than marked" limitations in this domain:

> The claimant has less than marked limitation in acquiring and using information.
>
> In September 2003, the claimant's Individualized Education Program indicated that out of 35 hours of school per week, the claimant was in regular classes for 34 hours and special education for only one hour (Exhibit 2F, p. 24).  On February 5, 2004, Dr. Michael Ingram noted that the claimant was "doing extremely well in school with three B's and one C" (Exhibit 2F, p.7).  At the end of the school year, his grades were between C and A (Exhibit 2F, p. 6; see also Exhibit 2F, pp. 11-12).  With the consultative psychologist in August 2004, the claimant remembered seven digits forward and four backwards (Exhibit 5F, p. 4).  As noted, the psychologist found the claimant "attentive for questions and answers and was not distracted" (id.).  As also noted, a teacher specifically stated that the claimant's behavior problems do not affect his grades (Exhibit 2F, p. 33).  According to the claimant, in the fall of 2004, he would enter the tenth grade in regular education (Exhibit 5F, p. 1).  These factors establish that the claimant's limitations in this domain are less than marked.

(A.R. 22-23).

The domain of "attending and completing tasks" involves the claimant's ability to focus and maintain attention and his ability to begin, carry through, and finish activities, including the pace at which he performs activities and the ease of changing activities.  20 C.F.R. § 416.926a(h).  Plaintiff had less than marked limitations in attending and completing tasks:

> The claimant has less than marked limitation in attending and completing tasks.  I have discussed, above, many elements of this domain.  In addition, one teacher noted only one of five school days during which the claimant "very much" failed to finish things he started (Exhibit 9E), and another teacher noted that during all five days, the claimant was "pretty much" unable to finish things he started (Exhibit 10E).  As noted, despite Richard's problems in this domain, his grades are adequate.  According to the claimant's mother, he completes tasks that he likes (Exhibit 3E).  The limitations described confirm less than marked limitations in this domain.

(A.R. 23-24).

-6-

Finally, the domain of "interacting and relating with others" involves the claimant's ability to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. 20 C.F.R. § 416.926a(i). The ALJ found that plaintiff had marked limitations in this domain:

> The claimant has marked limitation in interacting and relating with others. As noted, I accept the State Agency decision regarding this domain. In finding marked limitations, the State Agency relied on the claimant's behavior with his mother during the psychological consultative evaluation (Exhibit 6F, p. 3; Exhibit 5F). The State Agency also noted that at Vassar, he demonstrated "excessive horseplay" (Exhibit 6F, p. 3; Exhibit 2F, pp. 22, 41). But this occurred in September 2003 (Exhibit 2F, p. 22). In April 2005, one of the claimant's teachers stated that the claimant disturbed other children "just a little" or "not at all" in five school days (Exhibit 9E), and in March 2005, another teacher noted that he disturbed them "very much" only once in five school days (Exhibit 10E). In August 2003, when Richard was in detention, a counselor noted that he had not assaulted anyone (Exhibit 2F, p. 68), and in June 2004, he "consistently demonstrate[d] most or all of the following skills: ability to deal effectively with authority figures, assertiveness, decision-making, planning, problem solving, and independent living" (Exhibit 2F, p. 49). As noted, the claimant was a "great helper" in class (Exhibit 2F, p. 22). In May 2005, the claimant's medication was changed from Strattera to Concerta (testimony of Mrs. Wells; Exhibit 9F, p. 2). With the change in medication, he experienced an improvement in attention and mood (Exhibit 9F, p. 2). I give the claimant the benefit of the doubt and adopt the State Agency's determination in this domain.

(A.R. 24-25). Because plaintiff did not have an impairment or combination of impairments that resulted in either marked limitations in two domains of functioning or an extreme limitation in one domain of functioning, the ALJ found that plaintiff was not disabled. (A.R. 16-27).

## 2.

Plaintiff argues that the ALJ should have found that plaintiff had an extreme limitation in the domain of interacting and relating to others, or in the alternative, that plaintiff had a marked limitation in the domain of attending and completing tasks. (Plf. Brief at 2-3). Rather

than engaging the ALJ's factual findings and the supporting evidence that the ALJ cited in his

opinion, plaintiff lists selected excerpts from the administrative record and argues that the ALJ could

have found that plaintiff had greater restrictions in each of the two contested domains. (*Id.* at 3-5).

This is patently deficient. The ALJ's factual findings are at issue, and the court must determine

whether those findings are adequately supported under the deferential "substantial evidence"

standard. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d at 125. Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston*,

245 F.3d at 534. The scope of the court's review is limited, and the court does not review the

evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v.*

*Commissioner*, 127 F.3d at 528. "The findings of the [Commissioner] as to any fact if supported by

substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v.*

*Commissioner*, 474 F.3d at 833. The evidence the ALJ cited in his opinion (A.R. 20-25) provides

more than substantial evidence supporting the ALJ's findings that plaintiff had a less than marked

limitation in attending and completing tasks and that plaintiff had a marked limitation in interacting

and relating with others. Therefore, the Commissioner's findings must stand regardless of whether

the reviewing court would resolve the issues of fact in dispute differently. *Jones v. Commissioner*,

336 F.3d at 475.

### 3.

Plaintiff's argument that the ALJ failed to "properly analyze the medical records"

does not provide a basis for overturning the Commissioner's decision. Plaintiff objects to the

following excerpt from the ALJ's opinion:

I have considered the medical history beginning June 2003, twelve months before the date of the claimant's SSI application (20 CFR 416.912(d)).[3]  Exhibit 1F predates this period, as do Exhibit 7F and 8E.  Exhibit 2F, pp. 71-88, also predate the period in question.

After reviewing all the evidence, I conclude that the claimant has not been disabled within the meaning of the Social Security Act at any time since June 21, 2004, the date of his application for SSI [benefits].

(A.R. 17).  Plaintiff believes that this excerpt demonstrates that the ALJ "did not did not consider the evidence of record predating June 2003."  (Plf. Brief at 7).  The quote itself, however, reveals that ALJ had reviewed  "all the evidence" (A.R. 17), and the ALJ discussed plaintiff's records dated before June 2003 elsewhere in his opinion (A.R. 21).

The ALJ did not "ignore" the evidence predating June 2003, he simply found that plaintiff's more recent records provided greater insight regarding plaintiff's condition during the relevant time period: June 21, 2004 through April 20, 2006.  Plaintiff's mother filed the application for SSI benefits on June 21, 2004.  Although plaintiff alleged a 1999 onset of disability, administrative *res judicata* stemming from the denial of an earlier application for SSI benefits (A.R. 16) barred any claim by plaintiff that he was disabled on or before May 13, 2002.  *See Drummond v. Commissioner*, 126 F.3d 837, 841 (6th Cir. 1997).  Furthermore, SSI benefits are not awarded

---

[3]Section 416.912(d) generally provides for development of the claimant's medical record for the twelve months preceding the month the application for benefits is filed.  Plaintiff has not shown any deficiency in the ALJ's development of the administrative record.  Plaintiff was represented by counsel at the hearing. It was plaintiff's burden to produce medical records in support of his disability claim.  It was not the ALJ's burden.  *See Wilson v. Commissioner*, No. 07-5810, 2008 WL 2224834, at * 3 (6th Cir. May 29, 2008)("[T]he claimant bears the ultimate burden of proving disability."); *see also Struthers v. Commissioner*, No. 98-1528, 1999 WL 357818, at * 2 (6th Cir. May 26, 1999) ("[I]t is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment.").  The ALJ's special duty to *pro se* parties to develop the record does not extend to plaintiff, because plaintiff had legal representation at the hearing.  *See Wilson*, 2008 WL 2224834, at * 3; *Trandafir v. Commissioner*, 58 F. App'x 113, 115 (6th Cir. 2003).

retroactively for months prior to the application. 20 C.F.R. § 416.335; *see Brown v. Apfel*, 192 F.3d 492, 495 n.1 (5th Cir. 1999); *Torres v. Chater*, 125 F.3d 166, 171 n.1 (3d Cir. 1997); *Kepler v. Chater*, 68 F.3d 387, 389 (10th Cir. 1995); *see also Newsome v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). Thus, the question before the ALJ was whether plaintiff was disabled on or after June 21, 2004 (A.R. 49-51), not the alleged 1999 onset of disability date.

Even assuming *arguendo* that the ALJ did not adequately consider Exhibits 1F (A.R. 99-103), 2F pp. 71-88 (A.R. 174-91), 7F (A.R. 210-30) and 8E (A.R. 231-32), any error was harmless. *See Bass v. McMahon*, 499 F.3d 506, 510-11 (6th Cir. 2007); *see also Myatt v. Commissioner*, 251 F. App'x 332, 336 (6th Cir. 2007); *Potter v. Commissioner*, 223 F. App'x 458, 463-64 (6th Cir. 2007). Plaintiff has not demonstrated how any of these remote records establish that plaintiff was disabled on and after June 21, 2004. Exhibit 1F is an October 12, 2001 psychological evaluation report by Greg Johnson, M.S., Ph. D., a psychologist at the Eaton County Youth Facility. Psychologist Johnson performed the following tests: "Children's Depression Inventory, Carlson Psychological Survey, [and] Sacks Sentence Completion -- Children's Version." (A.R. 99). Johnson found that plaintiff's test results were "generally unremarkable." (A.R. 101). Plaintiff did not appear to be experiencing prominent symptoms of a mood or thought disorder. (*Id.*). Psychologist Johnson described plaintiff as being manipulative:

> RJ appears to be a young man of average intelligence who is not experiencing significant psychopathology beyond his behavioral problems. Specifically, there were no prominent symptoms of a mood disorder, anxiety disorder or thought disorder present. RJ initially presented as a naive, scared, and immature youth. However, this facade gradually eroded to reveal a youth that is unusually manipulative and sophisticated with emerging anti-social characteristics.

-10-

(A.R. 102).  Exhibit 2F contains plaintiff's records from Vasser Alternative Education Pioneer Work and Learn Center.  (A.R. 104-91).   The ALJ's opinion contains no fewer than eighteen references to Pioneer, Vasser, or Exhibit 2F.  The pages from Exhibit 2F that the ALJ described as "predat[ing] the period in question" (A.R. 174-91), are (1) plaintiff's records from the Eaton Intermediate School District records, the most recent document being a March 26, 2001 individual educational planning (IEP) team report (A.R. 174-80); and (2) an August 1999 ADHD assessment (A.R. 183-91) which was made approximately five months after plaintiff's half-brother had committed suicide (A.R. 184, 189), and during which plaintiff denied use of street drugs and alcohol and any involvement in illegal activity.  (A.R. 189).  Exhibit 7F consists of medication review records for the period of February 10, 2000 through January 29, 2002 (A.R. 210-26) and a four-page, February 10, 2000 psychiatric assessment report prepared by Paul Liu, D.O.  (A.R. 227-30).  Exhibit 8E (A.R. 84-86) is the February 1, 2002 discharge summary from Community Mental Health of Clinton-Eaton-Ingham Counties stating that plaintiff's file had been closed because plaintiff had been sent to the Eaton County Youth Detention Center after plaintiff had tested positive for substance abuse (marijuana and cocaine) and violated the terms of his probation.  The ALJ was aware of plaintiff's legal and substance abuse problems.  The ALJ noted at the outset of his opinion that plaintiff had been detained at Pioneer from July 2003 until June 18, 2004, and that plaintiff's mother filed the application for SSI benefits on June 21, 2004, three days after plaintiff had "returned home" to her custody.  (A.R. 16).  None of the above-referenced records predating plaintiff's application for SSI benefits by more than a year provides a basis for disturbing the Commissioner's decision finding that plaintiff was not disabled on and after June 21, 2004.

## Recommended Disposition

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.


Dated:   June 26, 2008              /s/  Joseph G. Scoville_____
                                    United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *McClanahan v. Commissioner*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).